FILED
2019 Sep-25 PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**Timothy M. Seagle,**
*Plaintiff*

**vs.**                                   **CASE NO: 2:19-CV-01338-JHE**

**Baptist Medical Center,  Princeton**
As a person, under **42 U.S.C. Sections 1983**
**Mike Neuendorf, Chief Executive Officer; B.M.C. Princeton**
Individually, and in his Official Capacity
**Sarah Dudley, Chief Operating Officer; B.M.C. Princeton**
Individually, and in her Official Capacity
**Sandy Cobb, Financial Counselor; B.M.C. Princeton**
Individually, and in her Official Capacity
**Tenet Healthcare Corporation**
As a person, under **42 U.S.C. Sections 1983**
**Howard Hacker, Chief Compliance Officer; Tenet Healthcare Corporation**
Individually, and in his Official Capacity,
                                   *Defendants*

# FIRST AMENDED COMPLAINT

1.    The Plaintiff brings this civil rights action to vindicate his rights under the U.S. Constitution, the Alabama State Constitution, and under the statutory laws of the U.S., and Alabama. The Plaintiff also brings this civil rights action for violations of his individual, privacy, associational, and Due Process rights under the **First, Fourth, Fifth, Ninth,** and **Fourteenth Amendments** to the United States Constitution; In violation of **42 U.S.C. Sections 1983;** And **Title 18 U.S.C. Sections 241, and 242.**

2.    This is an action for damages sustained by a citizen of the U.S., against **Baptist Medical Center, Princeton,** and **Tenet Healthcare Corporation,** for injuries sustained by the Plaintiff, on the date specified in his **COMPLAINT,** when the Defendant Employees willfully, deliberately, and with malice aforethought, stopped, harassed, threatened, and subjected the Plaintiff to **False Imprisonment,** as defined in **Section 6-5-170,** of the **Alabama Code; Extortion in the First Degree,** as defined in **Section 13A-8-1,** of the **Alabama Code;** And **Menacing,** as defined in **Section 13A-6-23,** of the **Alabama Code;** Denied the Plaintiff equal access to the hospital, and access to his surgery, which had been ordered by his physician, Dr. Daniel Avery; Subjected the Plaintiff to the improper use of excessive force; Thereby denying his right to **Due Process of Law,** with reckless disregard for the Plaintiff, as a citizen of the State of Alabama, and the U.S. This is also an action against Howard Hacker, Chief Compliance Officer of Tenet Healthcare Corporation; Who is in charge of the training, and supervision of the Defendant Employees; For his deliberate indifference towards the Plaintiff, for his failure to properly train, and supervise the Defendant Employees, with regard to the rules, and regulations of **Medicare,** and the financial policy of **B.M.C. Princeton;** The constitutional use of excessive force, the right to due process, the right of privacy, the right of freedom of association, the right to be free from illegal threats, the right to be free from false imprisonment; And his failure to implement proper policy, and procedure, as required by both state, and federal law.

## JURISDICTION

3.    The jurisdiction of this Court is invoked, pursuant to **28 U.S.C. Sections 1331, and 1334(a) (3), and (4),** to obtain redress for deprivation of rights guaranteed by the **First, Fourth, Fifth, Ninth,** and **Fourteenth  Amendments** of the  **U.S. Constitution,** pursuant to **42 U.S.C Section 1983.**

4.    The Plaintiff also invokes the supplemental jurisdiction of this Court for Alabama State Law claims, which arise from the same facts, allegations, and circumstances, under **28 U.S.C. Section 1367.**

5.    Venue is proper, pursuant to **28 U.S.C. Section 1393(b),** in that the events, and occurrences, giving rise to the Plaintiff's claims, occurred in the Northern District of Alabama, and pursuant to **Sections 6-3-2, and 6-3-11,** of the **Alabama Code.**

## PARTIES

6.    Timothy M. Seagle was born in Jefferson County, and has been a resident of Alabama for his entire life of fifty-two **(52)** years.  He is presently receiving full disability benefits, and **Medicare,** due to severe, spinal cord injuries, high blood pressure, high cholesterol, severe anxiety, depression, and chronic pain.

7.    Baptist Medical Center,  Princeton is a charitable, **501(c)(3)** *nonprofit,* hospital, licensed to operate in Birmingham, Alabama. It participates in the Medicare, and Medicaid Programs, as defined in **Title  XIX of the Social Security Act of 1965.**  B.M.C. Princeton cannot legally refuse to treat a patient, who receives benefits under these Federal Programs.

8.    Mike Neuendorf, individually, and in his Official Capacity,  as the  Chief Executive Officer of B.M.C. Princeton, is a policy maker for the hospital, and its Financial Dept.;  And he participated in the actions, and in-actions of the hospital, and its Financial Dept., which resulted in the injuries to the Plaintiff.

9.    Sarah Dudley, individually, and in her Official Capacity,  as the Chief Operating Officer of B.M.C. Princeton, is a policy maker for the hospital, and its Financial Dept.;  And she participated in the actions, and in-actions of the hospital, and its Financial Dept., which resulted in the injuries to the Plaintiff.  The Chief

Operating Officer   had training, and supervising authority for the Defendant Employees, at the time of the violations detailed herein, and was responsible for their training, supervision, and conduct.

**10.**    Sandy Cobb, the black, female, Financial Counselor, individually, and in her Official Capacity, is an employee of the Patient Services Dept., of B.M.C. Princeton;  And she participated in the actions, and in-actions of the hospital, and its Financial Dept., which resulted in the injuries to the Plaintiff.

**11.**    Tenet Healthcare Corporation is a multinational, investor-owned, ***for-profit,*** healthcare services company, based in Dallas, Texas, which has purchased every hospital in the Baptist Medical Center Network.

**12.**    Howard Hacker, individually, and in his Official Capacity, as Chief Compliance Officer of Tenet Healthcare Corporation, is a policy maker for B.M.C. Princeton, and its Financial Dept.;  He is responsible for making certain that all Tenet employees comply with all state, and Federal regulations imposed on B.M.C. Princeton;  And he participated in the actions, and in-actions of the hospital, and its Financial Dept., which resulted in the injuries to the Plaintiff.   The Chief Compliance Officer had training, and supervising authority for the Defendant Employees, at the time of the violations detailed herein, and was responsible for their training, supervision, and conduct.

# STATEMENT OF THE FACTS

**16.**    On Thursday, November 8th, 2018, the Plaintiff, and Sharon Bell, arrived at
B.M.C. Princeton Hospital, between 5:30a.m., and 6:00a.m., for surgery on his
right hand.   This surgery had been previously scheduled by the Plaintiff's surgeon,
Dr. Daniel Avery, approximately one week prior to November 8th.   The Plaintiff
states that he has been repeatedly diagnosed with Dupuytren's Contracture, and that
he underwent a preliminary surgery on, or about February 14th of 2017.   The
Plaintiff states that his preliminary surgery was performed by Dr. Joseph Sherrill,
at Brookwood Baptist Hospital.   The Plaintiff states that he was asked to make a
$100 co-pay, before surgery, which **Medicare** required, and that he did so.   The
Plaintiff states that his preliminary surgery was not successful, that his condition
worsened, and that Dr. Victoria Masear, and Dr. Daniel Avery strongly
recommended a second surgery, in order to properly correct the Plaintiff's
condition.   The Plaintiff also states that he was informed by Dr. Masear, and Dr.
Avery that they believed Dr. Sherrill had not correctly performed his preliminary
surgery, and that was the reason his condition had worsened.

**17.**    After the Plaintiff arrived at Dr. Avery's office, and signed his name to the
daily, patient roster, the nurse on duty provided him with a **Patient Armband,** to
indicate that he was scheduled for surgery.

**18.**    Shortly after the Plaintiff received his **Patient Armband,** an unidentified,
black, female, office clerk, called the Plaintiff into her office, and informed him,
and Sharon Bell, that he was required, by **Medicare,** to make a $100 co-pay on his
scheduled surgery. The Plaintiff refused to make this co-pay, because he had been
informed by **Medicare** that he had already made his required deductibles, and/or
co-pays for the year.

**19.**   The Plaintiff, and Sharon Bell, then placed a telephone call to **Medicare,** and
quickly confirmed that the Plaintiff was not required to make a co-pay on his
scheduled surgery. The Plaintiff states that he underwent neck surgery on June 13th
of 2018, at **Brookwood Baptist Hospital,** and that he made a $75 co-pay, at that
time, which the Patient Services Employee claimed was legally required by
**Medicare.** The Plaintiff states that the **Medicare Employee** with whom he spoke,
informed him that he had overpaid $100 on his two **(2),** previous surgeries, and
that B.M.C. Princeton owed him a refund.   This **Medicare Employee** further
informed the Plaintiff, that the $100 he had overpaid, had also been paid by
**Medicare,** that this constituted double billing by the hospital, and that **Medicare**
does not require patients to make any co-pays before surgical procedures are
performed. The Plaintiff alleges that this demand for $100, as alleged in

**paragraph 18,** constituted the crime **Extortion in the First Degree,** as defined in **Section 13A-8-14,** of the **Alabama Code.**

**20.**    The Plaintiff states that when he, and Sharon Bell, explained the details of **paragraph 19,** to the aforementioned, office clerk, she became argumentative, and belligerent, and loudly stated that she did not have to listen to, nor speak with the **Medicare Employee,** and she refused to give her name to the Plaintiff, so that a **Medicare Employee** could contact her directly. The Plaintiff alleges that this woman claimed that **Medicare** required the $100 co-payment, and that she was following the requirements of federal law. The Plaintiff states that this office clerk, telephoned another employee to help resolve this matter, and within a few minutes, a white, female, employee arrived at the office of the black, office clerk.

**21.**    The Plaintiff states that the white, female employee, introduced in **paragraph 20,** was informed by the office clerk, that the Plaintiff refused to make his required, $100 co-pay. The Plaintiff states that this white, employee also became argumentative, and belligerent, and loudly stated that she did not have to listen to, nor speak with the **Medicare Employee** either. The Plaintiff states that both women claimed they were following **Medicare** rules, and regulations, and that state, and federal law required a $100 co-pay, before allowing him to have his surgery. The Plaintiff further states that both women claimed that state, and federal law gave them the legal authority to cancel his surgery, if he refused to make his required $100 co-pay. The Plaintiff states that he, and Sharon Bell, then demanded that Dr. Avery be called into the office to help resolve this matter, because he was the only person who could cancel the Plaintiff's surgery. The Plaintiff states that the aforementioned white, female employee,  then left the office for several minutes. The Plaintiff states that when this woman returned to the office, she claimed that she had telephoned Dr. Avery, while he was in an operating room, preparing for another patient's surgery. The Plaintiff further states that this woman further claimed that Dr. Avery left his patient, in order to take her call, and that after she explained the problem to him, Dr. Avery canceled the Plaintiff's surgery for his refusal to make the $100 co-pay, and that Dr. Avery would not come to the office, nor did he wish to discuss the matter with the Plaintiff. The Plaintiff states that this woman then called security,  requested that a guard be sent to the office, and threatened to have the Plaintiff, and Bell arrested, if they did not leave the hospital. The Plaintiff states that he, and Bell, did absolutely nothing to injure, oppress, threaten, nor intimidate the two **(2)** female, B.M.C. Employees. The Plaintiff, and Bell, were unarmed, at this time, and at no point posed any grave threat to these women that would cause the need for the use of a firearm, nor an armed security guard. *Wakefield v. City of Pembroke Pines, 2008 WL 698931*

*(11th Cir. 2008).*

**22.** The Plaintiff alleges that the actions, and statements of the B.M.C. Employee, as stated in **paragraph 21,** were designed to injure, oppress, threaten, and intimidate the Plaintiff, and Sharon Bell, as defined in **Title 18 U.S.C. Sections 241, and 242;** And to prevent their contacting Dr. Avery, and informing him of the actions, and statements, of the B.M.C. Employees, as stated in **paragraphs 18 – 21.** The Plaintiff alleges that this B.M.C. Employee was acting under *"color of state, and federal law"* when she deprived the Plaintiff, and Sharon Bell, of their constitutional rights.

**23.** The Plaintiff alleges that the actions, and statements of the two **(2),** female, B.M.C. Employees, as stated in **paragraphs 20 – 22,** constituted willful, deliberate, and malicious violations of his individual, privacy, associational, and Due Process Rights under the **First, Fourth, Fifth, Ninth,** and **Fourteenth Amendments** to the United States Constitution; In violation of **42 U.S.C. Section 1983;** And **Title 18 U.S.C. Section 241.** The Plaintiff alleges that these actions, and statements also constituted an attempt to commit the crime of **Extortion in the First Degree,** as defined in **Section 13A-8-14,** of the **Alabama Code.** The Plaintiff further alleges that the two **(2)** female, B.M.C. Employees, were acting under *"color of state, and federal law"* when they deprived the Plaintiff, and Sharon Bell, of their constitutional rights.

**24.** The Plaintiff states that he experienced severe anxiety, depression, and mental anguish, after enduring the criminal actions, and verbal abuse, of the two **(2),** B.M.C. Employees, as stated in **paragraphs 18 – 23.** The Plaintiff states that as a result of this anxiety, depression, and mental anguish, his blood pressure increased dramatically, and he had to be escorted by a nurse, to a waiting room. The Plaintiff states that he has suffered with high blood pressure for several years, and takes daily, prescription medications in order to control it. The Plaintiff states that after the nurse calmed him down, and helped to stabilize his blood pressure, an unidentified, black, male, security guard arrived, and escorted him, and Sharon Bell, to the Office of Patient Services. The Plaintiff alleges that the actions of the security guard constituted the crime of **False Imprisonment, in the Second Degree,** as defined in **Section 13A-6-42,** of the **Alabama Code.** The Plaintiff alleges that the criminal actions, and verbal abuse, of the two **(2),** B.M.C. Employees, as stated in **paragraphs 18 – 23,** constituted the willful, wanton, negligent, reckless, and malicious infliction of emotional, mental, and physical distress; With the intent to aggravate, and compound his aforementioned, medical conditions; As stated in **paragraph 6.** The Plaintiff alleges that *"willful, and wanton conduct means acting consciously in disregard of, or acting with a reckless*

indifference, to the consequences, when the Defendants are aware of their conduct, and are also aware, from their knowledge, of existing circumstances, and conditions, that their conduct would probably result in injury." *Duncan v. Duncan 448 F. 3d 725, 729 (4th Cir. Va. 2006).* The Plaintiff alleges that the B.M.C. Employees were acting under *"color of state, and federal law"* when they deprived the Plaintiff, and Sharon Bell, of their constitutional rights.

**25.**    The Plaintiff states that he explained his situation, as stated in **paragraphs 18 – 24,** to Sandy Cobb, the Financial Counselor, introduced in **paragraph 10,** after he arrived in the Office of Patient Services. The Plaintiff alleges that this woman was also argumentative, and belligerent, and loudly stated that she did not have to listen to, nor speak with the **Medicare Employee.** The Plaintiff alleges that Sandy Cobb claimed the actions of the two **(2),** B.M.C. Employees, as stated in **paragraphs 18 – 24,** were acceptable, and in compliance with hospital policy, **Medicare Policy,** and Alabama State Law. The Plaintiff states that a second, unidentified, white female entered the Office of Patient Services, at this time. The Plaintiff states that this woman also became argumentative, and belligerent, and loudly screamed at the Plaintiff, and Sharon Bell, *"You need to calm down, and go fuck yourselves!"* The Plaintiff states that the three **(3),** B.M.C. Employees obviously informed this woman that the Plaintiff was on **Medicare,** and had refused to make his required, $100 co-pay, and that his surgery had to be canceled. The Plaintiff alleges that the three **(3),** aforementioned, B.M.C. Employees conspired with this unidentified woman, to violate the Plaintiff's civil rights, as defined in **Title 18 U.S.C. Section 241;** And that they did willfully, deliberately, and with malice aforethought; Incite, opportune, and motivate her to enter the office, and verbally assault the Plaintiff, and Sharon Bell. The Plaintiff states that another, black, female, employee entered the office, and claimed that she was from the Office of the Administrator, and that she had come to help resolve all of the Plaintiff's problems.   The Plaintiff alleges that the other three **(3),** B.M.C. Employees, refused to co-operate with this woman, so she gave the Plaintiff her business card, and asked him to contact her at a later time. The Plaintiff states that in all of the ensuing confusion, and chaos of the day, he lost this woman's business card, and cannot remember her name.

**26.**    The Plaintiff alleges that the actions, and statements of the three **(3),** B.M.C. Employees, and the unidentified, white woman, as stated in **paragraphs 18 – 25,** constituted the willful, wanton, negligent, reckless, and malicious infliction of emotional, mental, and physical distress; With the intent to aggravate, and compound his aforementioned, medical conditions, as stated in **paragraph 6.** The Plaintiff alleges that *"willful, and wanton conduct means acting consciously in disregard of, or acting with a reckless indifference, to the consequences, when the*

*Defendants are aware of their conduct, and are also aware, from their knowledge, of existing circumstances, and conditions, that their conduct would probably result in injury."* **Duncan v. Duncan 448 F. 3d 725, 729 (4th Cir. Va. 2006).** The Plaintiff alleges that the actions, and statements of the three **(3)**, B.M.C. Employees, and the unidentified woman, as stated in **paragraphs 18 – 25,** constituted willful, deliberate, and malicious violations of his individual, privacy, associational, and Due Process Rights under the **First, Fourth, Fifth, Ninth,** and **Fourteenth Amendments** to the United States Constitution;  In violation of **42 U.S.C. Section 1983;** And **Title 18 U.S.C. Section 241.** The individual actions of the individual Defendant Employees, against the Plaintiff, as previously set out herein, severally, and in their totality, are so outrageous in nature, as to shock the conscience of the community. The actions of the individual employees were willful, intentional, and malicious, as to create terror, and trauma to this Plaintiff. The repeated use of their authority to intimidate patients is so extreme in degree, as to go beyond all possible bounds of decency, and is intolerable in a civilized society. **Hilton v. City of Jackson, 508 F. Supp 2d 1045 (S.D. Ala. 2007).** The Plaintiff's emotional distress, caused by the Defendant Employees, was so severe, that no reasonable person could, nor should be expected to endure it. The Plaintiff further alleges that all four **(4)** women were acting under *"color of state, and federal law"* when they deprived the Plaintiff, and Sharon Bell, of their constitutional rights.

**27.**    The Plaintiff states that he, and Sharon Bell, had planned to remain at the hospital, in order to discuss their ordeal with Dr. Avery, but the aforementioned security guard, introduced in **paragraph 24,** informed them that they had to leave the hospital, and exit the property, or they would be arrested for trespassing. The Plaintiff states that this security guard was apologetic, and very polite, and informed the Plaintiff that he had to follow the instructions of Sandy Cobb, and the other two **(2)**, B.M.C. Employees, or else they would call the Birmingham Police Dept., and have the Plaintiff, and Bell, arrested.  The Plaintiff further alleges that this security guard grasped his handgun, and held it, in the holster, while he escorted the Plaintiff, and Sharon Bell, from the hospital property.  The Plaintiff states that he, and Bell, were unarmed, at this time, and at no point posed any grave threat to this security guard, nor anyone else on the hospital's property, that would cause the need for the use of a firearm. **Wakefield v. City of Pembroke Pines, 2008 WL 698931 (11th Cir. 2008).**    The Plaintiff alleges that this security guard informed him, and Bell, that if they ever returned to the hospital, they would be arrested, and jailed for trespassing, and the guard further stated that he did not want to see that happen. The Plaintiff alleges that the *"threatened, or actual injury to a citizen, by an Officer, is actionable under* **42 U.S.C. Section 1983".** **Warth v.**

*Seldin 422 U.S. 490 (1975).*

**28.**    The Plaintiff alleges that the actions, and statements of the B.M.C. Security Guard, as stated in **paragraph 27,** constituted the crime of **Menacing,** as defined in **Section 13A-6-23,** of the **Alabama Code; False Imprisonment, in the Second Degree,** as defined in **Section 13A-6-42;** Constituted willful, deliberate, and malicious violations of his individual, privacy, associational, and Due Process Rights under the **First, Fourth, Fifth, Ninth,** and **Fourteenth Amendments** to the United States Constitution; In violation of **42 U.S.C. Section 1983;** And were designed to injure, oppress, threaten, and intimidate the Plaintiff, and Sharon Bell, as defined in **Title 18 U.S.C. Sections 241, and 242.** The Plaintiff alleges that the B.M.C. Security Guard was acting under *"color of state, and federal law"* when he deprived the Plaintiff, and Sharon Bell, of their constitutional rights.

**29.**    The Plaintiff states that on the afternoon of this same day, November 8th, 2018, the Plaintiff received a telephone call from Dr. Avery's nurse/receptionist. The Plaintiff states that the nurse informed him that Dr. Avery was very concerned that the Plaintiff had not reported to B.M.C. Princeton for his hand surgery, as Dr. Avery had ordered during the previous week, and previously stated in **paragraph 16.**   The nurse wanted to know if the Plaintiff were ill, or if he had missed his appointment by mistake.  The Plaintiff states that he informed the nurse that he did report to the hospital, as ordered, by Dr. Avery, and further informed her of his experiences, earlier that same morning, as stated in **paragraphs 17 – 28.**   The Plaintiff states that the nurse was shocked, and speechless by the actions, and statements of the B.M.C. Employees, and categorically denied that Dr. Avery had canceled his surgery.   The Plaintiff states that the nurse scheduled another appointment for him to see Dr. Avery, at a later date.

**30.**    The Plaintiff states that he kept the appointment, as scheduled in **paragraph 29,** with Dr. Avery, at the Ortho-Sports Medicine Clinic, located in the Professional Building, at B.M.C. Princeton.  The Plaintiff cannot remember the actual date of this appointment, but it was sometime after November 8th, 2018.  The Plaintiff states that Dr. Avery categorically denied any knowledge of the events, actions, and statements made by the B.M.C. Employees, as stated in **paragraphs 17 – 28.** The Plaintiff states that Dr. Avery was especially upset by the statements made by the unidentified, white, female, B.M.C. Employee, as stated in **paragraph 21.**  Dr. Avery made it perfectly clear to the Plaintiff, that he **never** accepts telephone calls in an operating room, and that he does **not** allow anyone to interrupt his surgeries, for any reason.  The Plaintiff states that Dr. Avery informed the Plaintiff that he could perform his hand surgery at the Gardendale Operation Center, on April 2nd of

2019.

**31.**    The Plaintiff states that Dr. Avery performed his hand surgery, at the Gardendale Operation Center, on April 2nd of 2019. The Plaintiff states that he was not required to make any co-pay, before his surgery, and that Dr. Avery's Office mailed him a bill for $195, which was not covered by **Medicare.**

**32.**    The Plaintiff states that after his hand surgery, on April 2nd of 2019, he had follow-up appointments with Dr. Avery, and a physical therapist, at B.M.C. Princeton. The Plaintiff states that on one of his follow-up visits, he walked to the Office of the Administrator, in order to contact the black woman, introduced at the end of **paragraph 25.** The Plaintiff states that he was informed by Paula Brown, another employee in the Office of the Administrator, that the black woman was no longer in that office, and that she would be leading the investigation into the Plaintiff's allegations. The Plaintiff states that he, and Paula Brown, spoke for several minutes, behind closed doors, and that she promised to do everything within her power to resolve all issues raised by the Plaintiff. The Plaintiff states that Paula Brown has not contacted him, and that he has had no further communication with her.

**33.**    The Plaintiff states that on another follow-up visit, during the month of April, he went to visit Paula Brown, in her office, and was met by Lavon Beard, another employee in the Office of the Administrator. The Plaintiff states that Mr. Beard informed him that Ms. Brown was on her vacation, and would return to work in a few days. The Plaintiff states that when he tried to contact Ms. Brown several days later, Mr. Beard informed him that Ms. Brown was no longer in charge of investigating his allegations, and that he had assumed sole responsibility for the investigation.

**34.**    The Plaintiff states that he received a letter from Lavon Beard, dated May 17th of 2019, informing him that he had immediately begun an investigation into the Plaintiff's allegations, and that he would contact the Plaintiff after the investigation had been completed. The Plaintiff states that he, and Sharon Bell, spoke with Mr. Beard, by telephone, several more times during the month of May, in order to clarify their allegations.

**35.**    The Plaintiff states that he received another letter from Lavon Beard, dated June 13th of 2019. The Plaintiff states that this letter apologized for all of the problems experienced by the Plaintiff, as alleged in **paragraphs 18 – 30.** The Plaintiff states that this letter also claimed that the investigation ended with no

findings of inappropriate billing.

**36.**    The Plaintiff states that he has telephoned Lavon Beard several times since he received the letter, as stated in **paragraph 35.** The Plaintiff states that he has repeatedly left messages, requesting the names of the two **(2)**, unidentified women, introduced in **paragraph 10;**    The unidentified, security guard, introduced in **paragraph 11;** The unidentified, white female, introduced in **paragraph 13;** And the unidentified, black woman, introduced at the end of **paragraph 25.** The Plaintiff also states that he has requested information regarding the hospital's video surveillance system, pertaining to the actions of all individuals, as previously stated in **paragraphs 17 – 28.** The Plaintiff states that Mr. Beard has not contacted him, and that he has had no further communication with him. The Plaintiff also states that he mailed copies of his complaints, and copies of Mr. Beard's letters to **Mike Neuendorf, Sarah Dudley,** and **Howard Hacker.** The Plaintiff states that he has received no communication from any of the Defendants.

**37.**    The Plaintiff alleges that the disappearance of the unidentified, black woman, introduced at the end of **paragraph 25,** and her subsequent replacement by Paula Brown, as stated in **paragraph 32;** The disappearance of Paula Brown, and her subsequent replacement by Lavon Beard, and Mr. Beard's failure to return the Plaintiff's telephone calls, as stated in **paragraph 36;** All constitute prima facie evidence that Tenet Healthcare, and B.M.C. Princeton have adopted a criminal, complaint process which treats all complainants as adversaries.  The Plaintiff alleges that this criminal policy was designed to violate the federal, civil rights of all individuals requiring surgery, in all hospitals owned by Tenet Healthcare; And was also designed to criminally conceal Tenet's on-going practice of **Medicare Fraud.**

**38.**    The Plaintiff alleges that all actions, and in-actions, alleged to have been committed against him in this **COMPLAINT,**    constitute a willful, deliberate, premeditated, and malicious **course of conduct,** as defined in **Section 13A-6-92,** of the **Alabama Code.** The Plaintiff alleges that all of these actions, and in-actions, compose a series of acts, over a period of time, which evidences a continuity of purpose;  And that purpose was to enforce a criminal policy, and to deprive the Plaintiff, and Sharon Bell, of their constitutional rights. The Plaintiff alleges that Sandy Cobb, and the other  B.M.C. Employees, were acting under *"color of state, and federal law"* when they deprived the Plaintiff, and Sharon Bell, of their constitutional rights. The Plaintiff states that Sandy Cobb, and all other named defendants, as employees of **Tenet Healthcare,** are private parties. The Plaintiff states that *"private parties may be deemed state actors for the*

*purposes of a **Section 1983** action, when the private party,* **(Sandy Cobb),** *fulfilled a role that is traditionally a public function performed by a state." **Baez v. Jet Blue Airways,** 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (citing **Sybalski v. Independent Group Home Living Program, Inc.,** 546 F.3d 255, 257 (2d Cir. 2008).*

## COUNT ONE:  VIOLATION OF THE PLAINTIFF'S DUE PROCESS RIGHTS

**43.**    The Plaintiff incorporates, by reference, **paragraphs 1 – 42,** of this **Complaint,** as if fully set out herein.

**44.**    The **Defendants'** actions created a type of **malicious harassment,** based on the Plaintiff's socioeconomic status, which violated  The Plaintiff's Substantive Due Process Rights, under the **First, Fourth, Ninth,** and **Fourteenth Amendments** of the United States Constitution, pursuant to **42 U.S.C. Section 1983.** The Plaintiff was deprived of his right to undergo his surgery, which was legally ordered by Dr. Daniel Avery.  The Plaintiff alleges that **Tenet Healthcare,** and **B.M.C. Princeton,** discriminate against individuals with poverty-level incomes, and individuals receiving disability benefits.

## COUNT TWO:  EXCESSIVE USE OF FORCE BY DEFENDANT EMPLOYEES

**47.**    The Plaintiff incorporates, by reference, **paragraphs 1 – 46,** of this **Complaint,** as if fully set out herein.

**48.**    The Plaintiff alleges that the two **(2), B.M.C. Employees,** under the direction of Sandy Cobb, and acting under *"color of state, and federal law"* used the threat of excessive force, by calling an armed security guard to escort him, and Sharon Bell, out of the hospital.  The Plaintiff alleges that the security guard subjected him, and  Bell, to the threat of excessive force by grasping his handgun, while he escorted them out of the hospital.

## COUNT THREE:  FOURTH AMENDMENT - THREATS OF ILLEGAL

## SEIZURE

**49.** The Plaintiff incorporates, by reference, **paragraphs 1 – 48,** of this **Complaint,** as if fully set out herein.

**50.** The Plaintiff restates his previous allegations that he, and Sharon bell, were subjected to threats of illegal seizure, by the **Defendant B.M.C. Employees,** under the direction of Sandy Cobb, in violation of their **Fourth Amendment Rights.** The Plaintiff alleges that the **Defendant B.M.C. Employees** were acting in their official capacities, as officers of **B.M.C. Princeton,** and that they acted under *"color of state, and federal law",* when they deprived the Plaintiff, and Bell, of their constitutional rights. The Plaintiff alleges that the *"threatened, or actual injury to a citizen, by an Officer, is actionable under 42 U.S.C. Section 1983". Warth v. Seldin 422 U.S. 490 (1975).*

## COUNT FOUR:  FALSE IMPRISONMENT – FOURTH AMENDMENT

**51.** The Plaintiff incorporates, by reference, **paragraphs 1 – 50,** of this **Complaint,** as if fully set out herein.

**52.** The Plaintiff alleges that he, and Sharon Bell, were twice subjected to false imprisonment on November 8th of 2018, by **B.M.C. Employees,** in violation of their **constitutional rights;** As previously stated, and alleged in **paragraphs 24, 27,** and **28.**

## COUNT FIVE:  EXTORTION IN THE FIRST DEGREE

**53.** The Plaintiff incorporates, by reference, **paragraphs 1 – 52,** of this **Complaint,** as if fully set out herein.

**54.** The Plaintiff alleges that the actions of the **B.M.C. Employees,** as previously alleged in **paragraphs 18 – 23,** constituted the crime of **Extortion in the First Degree,** as defined in **Section 13A-8-14,** of the **Alabama Code.** The Plaintiff restates his claim that Dr. Daniel Avery had scheduled his hand surgery for

November 8th of 2018, as stated in **paragraph 16.** The Plaintiff restates his claim that his preliminary hand surgery, on February 14th of 2017, performed by Dr. Joseph Sherrill, was not successful, and that the Plaintiff could have filed suit, alleging malpractice. The Plaintiff states that he is not a vindictive individual, and simply decided to allow Dr. Avery to perform a second surgery, and correct his medical condition. The Plaintiff states that the **B.M.C. Employees** should have been made aware of the facts in his case. The Plaintiff states that **Baptist Medical Centers** should have provided his second surgery, free of charge, in order to correct the errors made by Dr. Joseph Sherrill, which only served to aggravate, and compound his condition. The Plaintiff states that Alabama Common Law recognizes the right to file a civil action, alleging extortion, and attempted extortion. See *Preskitt v. Lyons, 865 So. 2d 424, 430 (Ala. 2003)*

## COUNT SIX: VIOLATION OF THE PLAINTIFF'S RIGHT TO FREEDOM OF ASSOCIATION

**55.**     The Plaintiff incorporates, by reference, **paragraphs 1 – 54,** of this **Complaint,** as if fully set out herein.

**56.**     The Plaintiff alleges that the actions, statements, and threats of the **B.M.C. Employees,** violated his right to **Freedom of Association,** as established by the **First Amendment,** and the **Due Process Clause of the Fourteenth Amendment.** The Plaintiff alleges that Sandy Cobb did willfully, deliberately, and with malice aforethought, deny him his right to have his surgery; That one employee lied about having telephoned Dr, Avery;  And that Sandy Cobb ultimately had the Plaintiff escorted off the hospital property, by an armed security guard, in order to prevent his meeting with Dr. Avery.

## COUNT SEVEN: NEGLIGENCE

**57.**     The Plaintiff incorporates, by reference, **paragraphs 1 – 26,** of this **Complaint,** as if fully set out herein.

**58.**     The Plaintiff alleges that the actions of the **Defendant Employees,** as alleged in **paragraphs 1 – 26,** constituted **prima facie** evidence that the **Corporate Officers of Tenet Healthcare,** and **B.M.C. Princeton,** have willfully, and deliberately neglected to train their employees, in regard to the Civil Rights of

all individuals in society, especially individuals receiving **Medicare** benefits.

## COUNT EIGHT: DELIBERATE INDIFFERENCE THROUGH CUSTOM

**59.**    The Plaintiff incorporates, by reference, **paragraphs 1 - 58,** of his **Complaint,** as if fully set out herein.

**60.**    The **Defendants, Tenet Healthcare,  B.M.C. Princeton,** and their **Corporate Officers,** have tolerated the criminal violations of the civil rights of their patients receiving **Medicare** benefits; Such that the conduct is so persistent, and widespread, as to constitute custom, and policy of the hospital.  Although the **Defendants, Mike Neuendorf, Sarah Dudley,** and **Howard Hacker,** were given actual notice of the crimes committed against the Plaintiff,  they failed to take any corrective action. Therefore, the **Defendants'** inaction has amounted to a deliberate indifference to the rights of persons, and patients with whom the **B.M.C. Defendant Employees** come into contact. The Plaintiff alleges that this deliberate indifference to Civil Rights is motivated by monetary gain. See **Canton v. Harris (1989),** *"deliberate indifference to the constitutional rights of others (citizens), is actionable under 42 U.S.C. Section 1983".*

## COUNT  NINE:  FAILURE TO TRAIN

**61.**    The Plaintiff incorporates, by reference, **paragraphs 1 - 60,** of his **Complaint,** as if fully set out herein.

**62.**    The Plaintiff alleges that the **Corporate Officers** of **Tenet Healthcare,** and **B.M.C. Princeton,**   have repeatedly allowed such conduct as the willful, deliberate, negligent, reckless, and malicious infliction of emotional, mental, and physical distress;  With the intent to aggravate, and compound the painful, medical conditions of their patients receiving **Medicare** benefits. The Plaintiff also alleges that all **Corporate Officers** have repeatedly allowed their employees The Plaintiff alleges that these behaviors constitute a deliberate failure to train employees in the proper care of patients, in accordance with all state, and federal regulations.

## COUNT 14:  FIRST AND FOURTEENTH AMENDMENTS

## RETALIATION

**67.**    The Plaintiff incorporates, by reference, **paragraphs 1 – 66,** of his **Complaint,** as if fully set out herein.

**68.**    The Plaintiff alleges that the actions of the **B.M.C. Employees,** as alleged in **paragraphs 20 – 29,** constituted retaliation for his making a telephone call to **Medicare,** as alleged in **paragraph 19,** and exposing the **Defendants'** criminal practice of **double-billing.** The Plaintiff alleges that *"retaliation is unjust motive for constitutionally-violative acts".* ***Cain v. Tigard-Tualatin School District 23J (Dor 2003)* 262 F. Supp. 2D 1120.**

## PRAYER FOR RELIEF
Page (17)

**1.**     The Plaintiff requests the following relief:

**A.**     Order the Defendants, their officers, agents, and employees to refrain from engaging in all of the predicate **criminal,** and **unconstitutional actions** forming the basis of the pattern, and practice of misconduct described in the foregoing.

**B.**     Order the **Defendants,** their officers, agents, and employees to adopt, and implement policies, and procedures to remedy the pattern, and practice of misconduct described herein above, including, but not limited to:

**(1)**     Policies that will ensure the integrity of all **Corporate Officers,** and **Hospital Employees;**

**(2)**     Ensure thorough, and competent investigations of citizen, and patient complaints;  And

**(3)**     Ensure adequate training, regarding diversity, excessive force, and the constitutional rights of citizens, and patients, regardless of socioeconomic status;

**C.**     Order such other, appropriate relief, as the interests of justice may require.

**2.**     Grant the Plaintiff compensatory, and punitive damages against each of the **Corporate Defendants,** and the **Employee Defendants** in their individual capacities.

**3.**     Award the Plaintiff his costs, and fees.

**4.**     Award such other, and further relief as this Court may deem appropriate.

## THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY AS TO ALL COUNTS FOR LEGAL RELIEF

_Timothy M. Seagle_                    Plaintiff

Timothy M. Seagle
437 Morningside Drive
Mulga, Al. 35118-9427
(205) 337-0736
tseagle0736@gmail.com