# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY M. SEAGLE,** | }<br>}<br>} |
| **Plaintiff,** | }<br>}<br>} |
| v. | }<br>}  Case No.: 2:19-cv-01338-MHH<br>} |
| **BAPTIST MEDICAL CENTER PRINCETON, et al.,** | }<br>}<br>}<br>} |
| **Defendants.** | } |

## MEMORANDUM OPINION

Timothy Seagle, who is proceeding without an attorney, sued Baptist Medical Center Princeton, Tenet Healthcare Corp., and employees of each under Alabama Code §§ 6-5-170, 13A-8-1, 13A-6-23, and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. (Doc. 8, pp. 2–3). Mr. Seagle's allegations stem from his November 8, 2018 trip to Baptist Medical Center Princeton Hospital for hand surgery. (Doc. 8, p. 5, ¶ 16).

1

The Court permitted Mr. Seagle to proceed *in forma pauperis*, meaning without the prepayment of a filing fee. (Doc. 5). When a plaintiff proceeds *in forma pauperis*, a district court must review the plaintiff's complaint and dismiss it if it is frivolous. 28 U.S.C. § 1915(e)(2)(B). For purposes of § 1915, "[a]n issue is frivolous when it appears that 'the legal theories are indisputably meritless.'" *Ghee v. Retailers Nat. Bank*, 271 Fed. Appx. 858, 859 (11th Cir. 2008) (quoting *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)).

Dismissal under § 1915 is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Rules 8 and 12 of the Federal Rules of Civil Procedure govern a motion to dismiss. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D.

Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But "[t]his leniency . . . does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010). When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Accordingly, the Court accepts as true Mr. Seagle's factual allegations.

## FACTUAL ALLEGATIONS

Mr. Seagle was scheduled for a November 8, 2018 surgery at BMC Princeton Hospital. (Doc. 8, p. 5, ¶ 16). After arriving, a hospital clerk told Mr. Seagle that he owed a $100 copay for the surgery. Mr. Seagle, who is a Medicare beneficiary, told the clerk Medicare informed him he already met his "required deductibles, and/or co-pays for the year" and refused to make the payment. (Doc. 8, p. 5, ¶ 18). Mr. Seagle and Sharon Bell then called Medicare. According to Mr. Seagle, the Medicare employee with whom he spoke on November 8, 2018 told him he had

overpaid by $100 on each of two prior surgeries, and BMC owed him a $200 refund. (Doc. 8, p. 5, ¶ 19).

Mr. Seagle relayed this information to the hospital clerk and another hospital employee. (Doc. 8, p. 5, ¶¶ 18–20). According to Mr. Seagle, he and the two hospital employees had an extended discussion about whether Mr. Seagle owed a co-pay; the second hospital employee called Dr. Avery—the surgeon scheduled to perform Mr. Seagle's surgery—while Dr. Avery was in surgery; Dr. Avery left the operating room to cancel Mr. Seagle's surgery based on his refusal to make the required copay; and the second employee called security and told Mr. Seagle if he did not leave, she would have him arrested. (Doc. 8, p. 6, ¶ 21).

Because of this interaction, Mr. Seagle's his blood pressure rose, causing him to experience severe anxiety, depression, and mental anguish. (Doc. 8, p. 7, ¶ 24). A nurse had to help him to a patient waiting room. (Doc. 8, p. 7, ¶ 24). After his blood pressure stabilized, a security guard brought him to patient services. (Doc. 8, p. 7, ¶ 24). There, Mr. Seagle met with financial counselor Sandy Cobb and another hospital employee. (Doc. 8, p. 8, ¶ 25). According to Mr. Seagle, the unidentified employee became argumentative and began shouting expletives at him. (Doc. 8, p. 8, ¶ 25). Another hospital employee entered the room, gave Mr. Seagle her business card, and informed him "she had come to help resolve all of [Mr. Seagle's] problems." (Doc. 8, p. 8, ¶ 25). Mr. Seagle cannot locate the business card and

cannot remember the woman's name. (Doc. 8, p. 8, ¶ 25). The hospital security guard then told Mr. Seagle that if he did not leave the hospital, he would be arrested for trespassing. (Doc. 8, p. 9, ¶ 27). The guard grasped his gun while he escorted Mr. Seagle and Ms. Bell from the hospital property. The security guard "informed him . . . that if [he] ever returned to the hospital, [he] would be arrested[] and jailed for trespassing . . . ." (Doc. 8, p. 9, ¶ 27).

After returning home, Mr. Seagle received a phone call from Dr. Avery's nurse. The nurse "informed [Mr. Seagle] that Dr. Avery was very concerned that [Mr. Seagle] had not reported to BMC Princeton for his hand surgery . . . . and wanted to know if [Mr. Seagle was] ill or had missed his appointment by mistake." (Doc. 8, p. 10, ¶ 29). The nurse scheduled Mr. Seagle for another appointment with Dr. Avery, and while Mr. Seagle "cannot remember the actual date of this appointment . . . it was sometime after November 8th, 2018." (Doc. 8, p. 10, ¶ 30).

When Mr. Seagle saw Dr. Avery, Dr. Avery indicated he was unaware of the events of November 8, 2018. (Doc. 8, p. 10, ¶ 30). Dr. Avery told Mr. Seagle he never accepts phone calls while in the operating room. (Doc. 8, p. 10, ¶ 30). Dr. Avery rescheduled Mr. Seagle's surgery for April 2, 2019. (Doc. 8, pp. 10–11, ¶¶ 30–31). Dr. Avery performed the rescheduled surgery, and his office billed Mr. Seagle for $195 in costs not covered by Medicare. (Doc. 8, p. 11, ¶ 31).

During one of his follow-up visits with Dr. Avery at BMC Princeton, Mr. Seagle visited the hospital's "Office of the Administrator."  (Doc. 8, p. 11, ¶ 32). An office employee, Paula Brown, told Mr. Seagle she would investigate his claims stemming from the events of November 8, 2018.  (Doc. 8, p. 11, ¶ 32).  During his second post-surgery appointment, Mr. Seagle walked down to speak with Ms. Brown.  Ms. Brown was not there, and Mr. Seagle instead spoke with Lavon Beard.  Mr. Beard said he would investigate Mr. Seagle's claims.  (Doc. 8, p. 11, ¶ 33).  Mr. Beard sent Mr. Seagle a letter dated May 17, 2019, informing Mr. Seagle he had begun his investigation and would contact Mr. Seagle once the investigation concluded.  (Doc. 8, p. 11, ¶ 34).

On June 13, 2019, Mr. Seagle received a second letter from Mr. Beard.  The letter apologized for the events surrounding Mr. Seagle's surgery and stated the hospital had not found evidence of improper billing.  (Doc. 8, pp. 11–12, ¶ 35).  Mr. Seagle has unsuccessfully attempted to contact Mr. Beard since then.  (Doc. 8, p. 12, ¶ 36).

Based on these alleged facts, Mr. Seagle brings the following claims: violation of Fourteenth Amendment due process rights; excessive force by hospital security; threats of illegal seizure in violation of the Fourth Amendment; false imprisonment in violation of the Fourth Amendment; violation of the First Amendment right to free association; "deliberate indifference through custom"; and

retaliation under the First and Fourteenth Amendments. (Doc. 8, pp. 13–17, ¶¶ 43–68). He also claims that, in violation of Alabama law, the defendants falsely imprisoned him, extorted him, and menaced him. (Doc. 8, p. 2, ¶ 2).

Mr. Seagle requests an order enjoining future conduct and requiring the defendants to adopt policies to prevent a repeat of Mr. Seagle's experience; compensatory and punitive damages; costs and fees; and any other appropriate costs, fees, or relief. (Doc. 8, p. 18).

## ANALYSIS

With respect to his federal law claims, Mr. Seagle must proceed under 42 U.S.C. § 1983. "To obtain relief under § 1983, [a party] must show that he was deprived of a federal right by a person acting under color of state law." *Patrick v. Floyd Med. Center*, 201 F.3d 1313, 1315 (11th Cir. 2000). In his complaint, Mr. Seagle has not asserted a claim against a state actor. Mr. Seagle alleges that BMC is a 501(c)(3) Alabama nonprofit corporation. (Doc. 8, p. 3, ¶ 7). He pleads that Tenet is a "multinational, investor-owned, ***for-profit***, healthcare services company, based in Dallas, Texas." (Doc. 8, p. 4, ¶ 11) (emphasis in original).

A private entity is a "state actor" if either:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution, (2) the private parties performed a public function that was traditionally the exclusive prerogative of the

7

> State, or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participate in the enterprise[].

*Rayburn ex re. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).  Mr. Seagle alleges that BMC and Tenet were performing a public function that "was traditionally the exclusive prerogative of the State."  He states:  "'*private parties may be deemed state actors for the purposes of a* **Section 1983** *action, when the private party,* **(Sandy Cobb),** *fulfilled a role that is traditionally a public function performed by a state.*'"  (Doc. 8, pp. 12-13, ¶ 38) (emphasis in Doc. 8).

Although states sometimes provide healthcare, healthcare is not a public function traditionally reserved as the exclusive prerogative of states.  "[T]he short list of activities that have been held" to be public functions traditionally performed by the state "includes 'the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park.'"  *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999); *see also, Newsome v. Vanderbilt Univ.*, 653 F.2d 1100, 1114 (6th Cir. 1981) ("Many functions have been traditionally performed by governments, but few have been exclusively reserved to the states, such as conducting elections and providing all the municipal services of a town.").

Receiving Medicare or other federal funds does not transform a private hospital into a state actor.  *Modaber v. Culpeller Mem. Hosp., Inc.*, 674 F.2d 1023,

8

1026-27 (4th Cir. 1982) ("[A]cceptance of patients receiving Medicare and Medicaid benefits does not make the accepting hospital's actions attributable to the state.").

Because Mr. Seagle has not sued a state actor, he may not pursue his federal constitutional claims for alleged violation of his due process rights, use of excessive use of force, threats of illegal seizure, false imprisonment, freedom of association, and deliberate indifference. Therefore, the Court will dismiss Mr. Seagle's federal law claims without prejudice.

That leaves Mr. Seagle's state law claims. Mr. Seagle does not allege that the Court has jurisdiction over his claims based on diversity of citizenship under 28 U.S.C. § 1332, and the record indicates that there likely is not complete diversity of citizenship. (*See* Doc. 8, pp-4. 3, ¶¶ 3-12). Mr. Seagle asserts that the Court may exercise its supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. (Doc. 8, p. 3, ¶ 4). Pursuant to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over Mr. Seagle's remaining state law claims because "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(b)(3). If he wishes to pursue state law claims, Mr. Seagle should file a complaint in state court within 30 days. *See* 28 U.S.C. § 1367(d).

## CONCLUSION

Because Mr. Seagle has not named a state actor as a defendant, by separate order, the Court will dismiss his federal constitutional claims without prejudice. The Court declines to exercise jurisdiction over his state law claims. The Court asks the Clerk to please mail a paper copy of this opinion and the final order to Mr. Seagle.

**DONE** and **ORDERED** this 29th day of January, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE